## Commonwealth v. Barfod et al.

*John H. Maurer*, District Attorney, and *Franklin E. Barr*, Assistant District Attorney, for Commonwealth.

*Richard A. Smith* and *Stephen J. McEwen*, for defendants.

14

CRUMLISH, J., October 5, 1945.—This is an application by the Commonwealth for an order of forfeiture of bonds filed by defendants and surety sur appeal from sentence.

1. Defendants, Van Buskirk and Barfod, were tried together on two joint bills of indictment to April sessions, 1941. The one (no. 329) charged them, as officers of a certain corporation, to wit, Coal Operators Casualty Company (a casualty insurance company), with embezzlement and fraudulent conversion, in eight counts, under different applicable sections of The Penal Code, but all covering the same transaction, and therefore subjecting each of them to but one sentence. The other (no. 330) charged them with conspiracy to defraud Coal Operators Casualty Company for the benefit of themselves and of the United States Plate Glass and Liability Insurance Company of Philadelphia, a corporation of which they were officers and the record owners. The court withdrew from the jury the fifth and sixth counts of no. 329, charging fraudulent conversion by defendants, acting with certain associates, but left the other six counts of no. 329 and no. 330 to the jury, which rendered general verdicts of guilty on both indictments. Defendants were sentenced on bill no. 329 only. The sentences imposed were: Van Buskirk, two years in the county prison and a fine of $1,000 and costs, and Barfod, one year in the county prison and a fine of $1,000 and costs. Defendants took separate appeals from their respective sentences to the Superior Court. Both convictions were sustained in the following terms:

"The assignments of error are all overruled. The judgments are severally affirmed; and it is ordered that the defendants, Houghton E. Van Buskirk and Einar Barfod, severally appear in the court below at such time as may be fixed by that court and that

each of them be committed by said court until he has complied with his sentence or such part thereof as had not been performed when his appeal was made a supersedeas": Commonwealth v. Van Buskirk et al., 155 Pa. Superior Ct. 613 (1944).

Defendants in appealing from their respective sentences entered bonds, each in the sum of $2,500, whereon the Maryland Casualty Company was surety.

The bonds provided:

"We, and each of us, Einar Barfod (Houghton E. Van Buskirk) and Maryland Casualty Company do acknowledge ourselves jointly and severally indebted to the Commonwealth of Pennsylvania in the sum of Twenty-five hundred ($2500.00) dollars, to be levied of our and each of our lands and tenements, goods and chattels, conditioned that the said Einar Barfod (Houghton E. Van Buskirk) will prosecute his appeal from the judgment and sentence of the Court of Quarter Sessions of the Peace and General Jail Delivery for the City and County of Philadelphia to the Superior Court of the State of Pennsylvania in the above case with effect, pay all costs and charges awarded against him, and will be and appear at the said Superior Court for the State of Pennsylvania to be holden on the first Monday of November or any subsequent term or terms thereof, then and there to answer all such charges as may be preferred against the said Einar Barfod (Houghton E. Van Buskirk) and to abide the decision of the said Court, and not to depart the said Superior Court of the State of Pennsylvania and the Court of Quarter Sessions of the Peace and General Jail Delivery for the City and County of Philadelphia without leave, and upon the affirmance of the sentence and judgment of the said Court of Quarter Sessions of Peace and General Jail Delivery for the City and County of Philadelphia or upon the discontinuance or entry of a non pros of

said appeal, the said Einar Barfod (Houghton E. Van Buskirk) will surrender himself to the Sheriff of Philadelphia County, so that the sentence heretofore imposed upon the said Einar Barfod (Houghton E. Van Buskirk) by the said Court of Quarter Sessions of the Peace and General Jail Delivery for sentence or any other purpose that may be required by law then this recognizance to be void and of no effect; otherwise in full force and virtue."

An allocatur to the Supreme Court having been refused, Van Buskirk and Barfod appeared for execution of their sentences and were committed to the county prison. They have not paid either the fines imposed or the costs of prosecution as sentenced. The Commonwealth made formal demand upon defendants to pay the fine and cost and upon their failure to comply the district attorney moved the court to enter an order of forfeiture on the surety bonds. Subsequently, the district attorney filed a petition for judgment of forfeiture of the bonds, which was discontinued, without prejudice, on June 21, 1945, by Smith, P. J.

2. The district attorney's present action is opposed by the surety which contends: (1) The quarter sessions court is without jurisdiction; (2) the surety's obligation, which has been discharged, was limited to the liability of defendants for payment of "costs and charges awarded against them and surrender to the sheriff"; (3) the terms of the bond should be construed most strongly against the Commonwealth because it was prepared by it; (4) "as there was no order of supersedeas by the Superior Court or the quarter sessions court, there was no stay of execution of the penalty imposed except by the grace of the Commonwealth."

3. These contentions resolve themselves into two questions: (a) Is the quarter sessions court without

jurisdiction to declare a forfeiture of an appeal bond? (*b*) Has there been a breach of the terms of the bond warranting an order of forfeiture?

(*a*) Is the quarter sessions court without jurisdiction?

The Commonwealth seeks to have the recognizances of defendants and surety declared forfeited. Forfeiture is a judicial act and conclusive of a breach: Pierson v. Commonwealth, 3 Grant 314 (1861).

"Forfeiture . . . is the judgment of the court upon condition broken, and can be entered only upon proper hearing and adjudication": per Finletter (Thomas K.), J., Commonwealth v. Bauer, 9 Phila. 589, 29 L. I. 68 (1872).

The Act of April 22, 1846, P. L. 476, sec. 4, 17 PS §503, provides:

"All recognizance of bail, for the appearance of anyone charged with a criminal offense, *which are or shall be forfeited, before* the court of oyer and terminer and general jail delivery, and *quarter sessions of the peace, in the city and county of Philadelphia,* which have been or shall be taken before either of the judges of the said court, or before any alderman or justice of the peace for the said county, and returned to the said court, *shall be sued and prosecuted in the said court, and in no other court;* and that the fees and commissions, for services rendered by the clerk of the said court, shall be the same as those prescribed for the prothonotaries of the courts of common pleas, for like services." (Italics supplied)

The surety, however, takes the position that this statute gives no judicial authority "to declare a judgment of forfeiture for the amount of the fine under an appeal bond." With this, we cannot agree. The Act of April 4, 1837, P. L. 377, sec. 2, 17 PS §502 provides, inter alia:

". . . and that the said *Court of Quarter Sessions* shall have full power and authority to issue process

*on all forfeited recognizances whatsoever,* now or hereafter forfeited in said court, and in the court of Oyer and Terminer, holden by the judges of the said court of Quarter Sessions, now or hereafter forfeited in the said courts, and to prosecute the same to final judgment and recovery, . . ." (Italics supplied).

The Act of May 19, 1897, P. L. 67, sec. 5, 12 PS §1137, provides:

"Bail upon any appeal *shall be entered in the court from which the appeal is taken,* shall be in the name of the Commonwealth to the use of all parties interested, and shall be sued upon in like manner as official bonds." (Italics supplied).

A reading of these statutes requires no extended discussion to support the proposition that the quarter sessions court has jurisdiction to declare the appeal bonds of defendants and their surety forfeited upon proof of a breach of any of the conditions thereof.

While it is not necessary to a determination of the immediate question of jurisdiction, it may not be amiss to say a few words regarding the surety's contention that an adjudication of forfeiture would be "superfluous and unnecessary." In this connection, it is contended, "if the court had the authority and entered a decree of forfeiture on an appeal bond, the procedure provided by the statute (and even suggested by Smith, J.), would be superfluous and unnecessary, as there would be no issue left to be tried by a court and jury. The decree of forfeiture would, in itself, adjudicate the issue of the surety's compliance or non-compliance with the bond." It is further contended that the statutes require the Commonwealth to act in assumpsit in the court of common pleas and to proceed to trial after issue is joined. In taking this position, the surety goes on the erroneous assumption that an adjudication or order of forfeiture is an absolute judgment requiring no further proceedings.

The answer is that the statutes make it clear that final judgment cannot be entered upon a recognizance on a bond without further proceedings after the forfeiture. Thereafter, the action will be in assumpsit on a forfeiture of recognizance in this court. See Commonwealth v. Meeser, 19 Pa. Superior Ct. 1, 8, (1902) and cases therein cited.

(b) Has there been a breach of the terms of the bonds?

Having determined that this court has jurisdiction, the next subject to be considered is whether or not there has been a breach of the terms of the appeal bonds. There must be proof of a breach before the order of forfeiture may be entered. See Commonwealth v. Bauer, 9 Phila. 589, supra.

The Commonwealth contends that the principals and surety have breached the terms of the bond in the following respects: Have failed (1) to prosecute the appeal with effect; (2) to pay the costs or charges; (3) to abide the decision of the Superior Court, and (4) to pay the cost and fine as imposed in the sentence, and to this extent the sentence has not been executed. The surety, on the other hand, contends, to use its own language, "since the order of the court was not for a supersedeas, but only that bail be reëntered pending appeal, and since there was no order of the court requiring defendant to abide by or comply with the judgment of the court, and since the surety did not covenant that defendants would pay the penalty of the fine or abide by or comply with the judgment of the court, but only that defendants would pay costs and charges awarded against them and surrender to the sheriff, which was done, for execution of the sentence imposed, it is not liable for the penalty or fine and there exists no basis for decree of forfeiture even if such judicial authority rests in the court."

Despite the surety's assertion to the contrary, the record shows that the costs and charges assessed against the principals as defendants have not been paid.

The question of whether or not the conditions of the bonds obligate the surety to pay the fines imposed on Van Buskirk and Barfod, requires much more consideration. The contention of the parties requires the ascertainment of the intention of the parties as expressed in a written contract. In construing the bond under consideration, "the primary rule is to ascertain and give effect to the intention of the parties, and in arriving at such intention, where the language is doubtful or susceptible of more than one construction, the Court may consider the nature and situation of the subject matter and the apparent purpose or object in making the contract in the form in which it was made, or of using a particular expression or sentence." Applying this rule to the bonds before us, set out in full, supra, we reach the conclusion that the surety bound itself that each defendant would (1) prosecute his appeal with effect; (2) pay all costs and charges against him; (3) be and appear at the Superior Court the first Monday in November or subsequently, then and there to answer all charges as may be preferred against him; (4) to abide the decision of the said court; (5) and not to depart the Superior Court and the court of quarter sessions without leave; (6) upon the affirmance of the judgment or upon the discontinuance or entry or non pros of the said appeal and surrender himself to the sheriff so that sentence heretofore imposed by the said court of quarter sessions may be executed, and (7) if necessary, appear before the court of quarter sessions for sentence or for any other purpose that may be required by law. From the record before us we reach the conclusion that the following conditions of the ap-

peal bonds have not been met: (1) The appeal has not been prosecuted with effect; (2) the costs and charges have not been paid; (3) they have not abided the decision of the Superior Court by paying the fine as imposed in the sentence.

As to the first condition, namely, the defendant will prosecute the appeal with effect, we think it is settled that it means the appeal will be prosecuted with success.

". . . we are of opinion that the great weight of authority supports the contention of appellee and that this is no longer an open question in Pennsylvania. As we said in Balsley v. Hoffman, 13 Pa. 603, by Mr. Justice Bell in delivering the opinion of this court: 'It may then be taken as conclusively settled, that the obligors in a replevin bond, whether they be called principals or sureties, are bound to make good each of its several conditions, among which stands prominently the stipulation to prosecute the replevin with success.' It has been held over and over again in our state that the stipulation to prosecute with effect means to prosecute with success: Gibbs v. Bartlett, 2 W. & S. 29; Pittsburgh National Bank of Commerce v. Hall, 107 Pa. 583; Watterson v. Fuellhart, 169 Pa. 612. In the last case cited, Mr. Justice Dean, speaking for this court, said: 'The several undertakings stipulated by a replevin bond constitute distinct and independent conditions, and a breach of any will constitute a forfeiture' ": Commonwealth, to use, v. Lenhart et al., 233 Pa. 526, 529 (1912).

Defendants here have failed to prosecute with success.

In the Lenhart case, supra, it was further said, in this regard (p. 530):

"The appeal was not prosecuted with success by reason of which failure there was a breach of one condition and consequently a forfeiture of the bond

under the rule above stated. What liability attached to the sureties when the condition of the bond was broken? This depends upon the extent of their undertakings. Was their obligation simply that the principal should prosecute his appeal with effect, and failing to do so, that he would surrender himself into the custody of the proper officers for the purpose of serving his term of imprisonment under the sentence? We do not so read or understand the conditions of the bond, which were that: 'Lenhart will prosecute his appeal with effect and will abide by and comply with all orders and the judgment of the Superior Court in the cause.' "

As stated, also, in that case (p. 531), the Superior Court affirmed the judgment of the court below and the judgment of the court below included the payment of a fine and costs of prosecution as well as a term of imprisonment: "We do not see any escape from the conclusion that when the Superior Court affirmed the judgment of the Court below, it did so as a whole, and included every part and condition of the sentence in its affirmance." In the case before us the sentence of the court of quarter sessions was that each defendant undergo imprisonment, and also that he pay a fine and pay costs. The principal was obligated to pay the fine and costs because it was a part of the judgment of the court that he do so, and the surety contracted for defendants that each would comply with the orders and abide by the decision of the Superior Court. Therefore, failure to pay the costs and to pay the fine constitute a breach warranting forfeiture. To the same effect, see Rupp et al. v. Zimmerman, 4 Lehigh 265 (1911), opinion by Trexler, P. J., (C. P., Lehigh Co.).

Surety further contends that the words "abide the decision of the said Court" do not entail any greater undertaking than that each defendant will surrender himself to the sheriff. We do not agree. The words

signify to adhere to, to submit to, to obey, to accept the consequences of that decision. See 1 Words and Phrases, First Series; 1 Words and Phrases, Fourth Series. See 1 C. J. S. 308: And in this sense they are indistinguishable from the meaning of the words employed in Commonwealth v. Lenhart, supra: "abide by and comply with all orders and the judgment of the Superior Court."

Surety also takes the position that the appeal was not a supersedeas, hence the order of the Superior Court that defendants "appear in the court below at such time as may be fixed by that court, and each of them be committed by said court until he has complied with his sentence or such part thereof as has not been performed when his appeal was made a supersedeas" (Cf. Commonwealth v. Van Buskirk, supra, p. 636) is not correct and that the order of the court below was for appearance only. The controlling statute, the Act of May 19, 1897, P. L. 67, sec. 12, 12 PS §1149 reads as follows:

"In appeals from judgments and decrees in mandamus, quo warranto, contested election cases, from sentences in criminal proceedings and all other classes of cases not herein otherwise provided for, the appeal shall not operate as a supersedeas, unless so ordered by the court below or the appellate court or any judge thereof either by general rule or special order, and upon such terms as may be required by the court or judge granting the order of supersedeas."

We are of the opinion that the order of the learned trial judge, Mawhinney, J., that bail be reëntered in the amount of $2,500 pending appeal to the Superior Court was an order of supersedeas. Sentence was not executed, and defendants were permitted to go free pending the appeal to the Superior Court. It would be idle to contend that it was not a supersedeas simply because the learned trial judge did not call it

such by name. For what other reason would the court order bail to be reëntered pending appeal? In this regard see Commonwealth ex rel. v. Best, 34 Pa. Superior Ct. 219 (1907), where it was held that if a prisoner convicted of a misdemeanor is sentenced to fine and imprisonment, and immediately enters a bond for his appearance without surrendering himself, and thereafter takes an appeal without securing an order of supersedeas, he cannot, after his appeal has been non prossed, object to an order of the quarter sessions court directing that the sentence be carried into effect, on the ground that the appeal had not been made a supersedeas:

"There can be no doubt that the recognizance of September 29, 1906, was entered with a view of securing a supersedeas. . . . He was permitted to be at large, however, presumably because of the belief of that officer that the entry of the recognizance was a supersedeas. That it accomplished the purpose of securing the liberty of the relator until his appeal was finally disposed of in the Superior Court is apparent. The situation was brought about by the relator's own act. He did not surrender himself to the sheriff when the sentence was imposed but immediately gave bail in anticipation, as we may assume, of the appeal he afterward took. The appeal, as taken, did not stay the execution of the sentence, but the relator did stay it by his own conduct."

Certainly the order of the court directing that bail be entered pending appeal, and the entry of that bail in the amount required, and the fact that it did operate as a supersedeas leaves no question that it was in fact a supersedeas.

The surety next contends that defendants were required to furnish nothing more than a bail bond for appearance, under terms of the order to reënter bail pending appeal, and "that it must be presumed

that this form required no more than the order of court called for". The order was an order of supersedeas, and the bail was reëntered under a bond conditioned that defendants abide the decision of the Superior Court, and upon affirmance of the judgment surrender themselves so that sentence may be executed. There is no statutory limitation on the conditions that may be imposed in a bond when the appeal is made a supersedeas: Commonwealth v. Lenhart, supra. The bond was given voluntarily, and on a form provided by the Commonwealth for such appeals. It may be enforced according to its terms: Commonwealth to use v. Gould, 48 Pa. Superior Ct. 528 (1912), and the cases cited therein; cf. Commonwealth v. Wistar et al., 142 Pa. 373 (1891), where there was a statutory limitation restricting conditions of the recognizance on appeals, "to prosecute such appeal with effect, and to pay all costs that may be adjudged against him". It may be stated here, even in cases involving forfeiture of recognizances of bail for appearance of one charged with a criminal offense, upon a petition for remission, fines and costs imposed as a part of the sentence have been deducted when defendant has failed to pay them: Commonwealth v. Cohen, 22 Pa. Superior Ct. 55 (1903) ; Commonwealth v. Real Estate Title Insurance & Trust Co., 22 Pa. Superior Ct. 235 (1903).

Finally, surety contends, "if any provision in this bond could be interpreted more extensively under some other and more comprehensive order in view of the order entered, it must be resolved against the Commonwealth which prepared and furnished the form used." We have considered this principle in arriving at the intention of the parties. True, the language of the conditions of the bonds might have been more positively stated but, nevertheless, the terms employed had a fixed, known and judicially

determined meaning when used by the parties. Therefore, the language was susceptible to but one interpretation and it is to be presumed that it was used in the sense of the then existing law: Snyder v. Leibengood, 4 Pa. 305 (1846).

4. Accordingly, we enter the following

*Order*

And now, October 5, 1945, the recognizances are adjudged and decreed forfeited, and the district attorney is directed to commence suit upon the same.

GORDON, JR., P. J., February 26, 1946.—This is an action sur recognizance in the quarter sessions, and the case is before us on a rule for judgment for want of a sufficient affidavit of defense. As the facts are not in dispute, the case turns entirely upon questions of law. The suit is on a recognizance given by the principal, Barfod, to secure a supersedeas on appeal to the Superior Court from his conviction of embezzlement and sentence to pay a fine of $1000, the costs of prosecution (amounting to $25.13) and to undergo imprisonment for one year in the Philadelphia County Prison. The record shows that after sentence was imposed the court directed "bail to be reëntered in the sum of $2500 pending appeal to the Superior Court," but entered no formal order expressly making the appeal a supersedeas, and that on the same day Barfod and defendant, the Maryland Casualty Company, as surety, entered their recognizance of bail in the amount so fixed by the court. One of the minor points raised by the surety is that the bond was not a supersedeas bond because it was not so entitled, and because of the absence of a formal order for a supersedeas. Such a contention is entirely without merit. The bail given was in an amount appropriate for a supersedeas in the case of a judgment for the fine im-

posed here, being at least double the amount of the
fine and costs, as provided by section 6 of the Act of
May 19, 1897, P. L. 67; the conditions of the bond are
precisely those required for a supersedeas; it was en-
tered for the purpose of procuring such an allowance,
and did in fact effect suspension of execution of the
sentence and release of the principal pending the ap-
peal. Having thus procured and enjoyed all the bene-
fits of a supersedeas, the obligors will not be heard
to claim that the bond was not given for what they
intended to, and did, procure through its entry: Com-
monwealth ex rel. v. Best, 34 Pa. Superior Ct. 219.

After the Superior Court had dismissed the appeal
and affirmed the judgment of the lower court, de-
fendant surrendered himself and served the imprison-
ment imposed upon him, but failed to pay either the
fine or costs which were also imposed as part of the
sentence affirmed by the judgment of the Superior
Court. The Commonwealth then filed a petition in
the quarter sessions for judgment on the recognizance
against the surety, to which defendant objected on the
ground, inter alia, that the quarter sessions was with-
out jurisdiction of the case because, under the Act of
1897, supra, the proceeding should have been in the
common pleas. In an opinion dismissing the petition
and holding that the case was properly in the quar-
ter sessions our Brother Smith said:

"The cases seem to indicate that there must be
a cause of action in assumpsit brought by the Com-
monwealth against the surety, and, in this cause of
action in the nature of a statement of claim, must be
set forth the facts which are alleged in the said
petition of the Commonwealth; the contents of the
bond; that it was intended as a supersedeas; that it
was a forfeiture of the recognizances; that a judgment
on the forfeited recognizance was entered of record
by the Court of Quarter Sessions, and that, upon these
averments contained in the statement of claim, surety

is compelled to make answer thereto so that an issue may be joined for a hearing by the court or by the court and jury."

Upon the dismissal of this petition the district attorney moved for forfeiture of the recognizance, with notice to defendant surety, which appeared and raised the same objections to the forfeiture that it had interposed to the rule for judgment, the principal ones being, first, that jurisdiction over a proceeding on the recognizance is exclusively in the common pleas, and second, that there had been no breach of the conditions of the bond justifying a forfeiture, since Barfod had surrendered himself after the affirmance of the sentence by the Superior Court, and the bond, properly read, did not require payment of the fine as one of its conditions. All the objections of the surety were overruled, after hearing, in an exhaustive opinion filed on October 5, 1945, by our Brother Crumlish, the recognizance was adjudged forfeited and the district attorney directed to sue it out. This he proceeded to do, following the settled and established practice in the quarter sessions of this county, by filing and serving upon defendant a statement of claim and a rule to file an affidavit of defense (the practice in assumpsit actions in the common pleas), without first issuing and serving a formal summons upon defendant. Defendant then filed an affidavit of defense to the statement raising questions of law, in which it raised the same questions that had previously been raised and decided against it both in the rule for judgment and at the forfeiture of the recognizance. The additional objection was also advanced that the proceeding was defective because, as indicated above, a formal summons to bring defendant in had not first been issued and served upon defendant. After argument we held the affidavit of defense raising questions of law insufficient with leave to defendant to

file an affidavit of defense to the merits, and the Commonwealth's rule for judgment for want of a sufficient affidavit of defense is now before us for decision.

No factual issues are raised by the affidavit of defense, which merely denies that the conditions of the bond include payment of the fine, and also reiterates the jurisdictional and procedural objections which have been already three times decided against defendant by Judge Smith, Judge Crumlish and by ourselves.

The opinion of Judge Crumlish upon the forfeiture of the recognizance covers all questions raised by the present rule, and is so comprehensive and thoroughly annotated with authorities that any elaborate discussion of them at this time would amount to little more than a concurring opinion. It will be sufficient, therefore, if we briefly outline the ratio decidendi of our conclusions upon the three principal questions raised by the affidavit of defense. These are: (1) Whether, under the provision of section 5 of the Act of May 19, 1897, P. L. 67, governing appeals to the Supreme and Superior Courts, which provides that "Bail upon any appeal shall be entered in the court from which the appeal is taken . . . and shall be sued upon in like manner as official bonds", the common pleas or quarter sessions of this country has jurisdiction; (2) whether the present proceedings are fatally irregular and defective because no formal writ of summons was issued and served upon defendant after the forfeiture and before the statement of claim was filed, and (3) whether the conditions of the bond in suit guaranteed payment by defendant of the fine imposed as part of the sentence.

As to the first of these questions, which challenges the jurisdiction of the quarter sessions, defendant contends that, although the law as it stood when the Act of 1897 was passed gave the Quarter Sessions Court of Philadelphia County exclusive jurisdiction of suits upon recognizances forfeited in it, that act

modified the existing law with respect to bails given on appeals by providing that they should be sued upon "in like manner as official bonds", thus transferring the jurisdiction of such suits to the common pleas, in which official bonds are sued out. We think the Act of 1897 clearly did not do so. It is true that the quarter sessions has no general jurisdiction over civil actions upon contracts, and that all such suits must ordinarily be brought in the common pleas. For that reason actions on recognizances given and forfeited in the quarter sessions always have been, and still are, brought in the common pleas in most of the counties of the Commonwealth. In Philadelphia, however, all such suits are prosecuted in the quarter sessions, and a search of the records of our quarter sessions discloses that, although they are not numerous, appeal bonds in criminal matters in Philadelphia County have been consistently sued out in the quarter sessions, both before and since the Act of 1897 was passed, and that none have been sued out in the common pleas. This practice was inaugurated apparently by section 2 of the Act of April 4, 1837, P. L. 377, by which the Court of Quarter Sessions in Philadelphia County was given "full power and authority to issue process on all forfeited recognizances" in said court and "to prosecute the same to final judgment and recovery, and to moderate or remit the same, as effectually as the several courts of Common Pleas of this commonwealth now may or can do." This act gave concurrent jurisdiction to the quarter sessions in suits on recognizances forfeited there, and by the last part of the section quoted extended the practice of the common pleas in such suits to the quarter sessions: Commonwealth v. Fogelman et al., 3 Pa. Superior Ct. 566. The law stood thus, with concurrent jurisdiction in the common pleas and quarter

sessions, until the Act of April 22, 1846, P. L. 476, sec. 4, which provides:

"All recognizances of bail, for the appearance of anyone charged with a criminal offense, which are or shall be forfeited, before the court of oyer and terminer and general jail delivery, and quarter sessions of the peace, in the city and county of Philadelphia . . . shall be sued and prosecuted in the said court, and in no other court; . . ."

The only effect of the Act of 1846 was to give exclusive jurisdiction of such suits to the quarter sessions in Philadelphia, which has now exercised that jurisdiction for a century, without interruption and without challenge, in all forms of recognizances in criminal cases, including bail on appeals to the Supreme and Superior Courts, and this notwithstanding the passage in 1897, upward of 50 years ago, of the act governing appeals to the higher courts. Such a long standing interpretive practice is not to be lightly ignored, and, we think, conclusively settles the question of jurisdiction against the contention of defendant.

Apart from that consideration, however, we do not think that the language of section 5 of the Act of 1897 itself supports the interpretation suggested by defendant. It reads: "Bail upon any appeal shall be entered in the court from which the appeal is taken, shall be in the name of the Commonwealth to the use of all parties interested, and shall be sued upon in like manner as official bonds."

While it is true that official bonds must be sued upon in the common pleas because of its general jurisdiction over actions upon contracts and the absence of any statute conferring jurisdiction over such suits upon other courts, the Act of 1897, neither in the language quoted, nor elsewhere, indicates any intention to disturb the respective existing and estab-

lished jurisdictions of the quarter sessions and common pleas in such matters. It merely provides that appeal bonds "shall be sued upon in like manner as official bonds." This obviously refers only to the procedure prescribed for suits on official bonds by section 6 of the Act of June 14, 1836, P. L. 637, which is purely a practice act, and makes no mention of the jurisdiction in which the suit shall be prosecuted. In addition, to hold that the Act of 1897 was intended to divest the quarter sessions of the jurisdiction it therefore had in such cases, and to transfer and vest it exclusively in the common pleas, would ignore section 58 of the Statutory Construction Act of May 28, 1937, P. L. 1019, which requires laws decreasing the jurisdiction of a court of record to be strictly construed, and no such clear intention is to be gathered from the Act of 1897 itself. Defendants' challenge to the jurisdiction of the court in this case is, therefore, without merit.

The case being properly in the quarter sessions the next question that arises is whether the present proceedings are defective because defendant was not brought in by the formal issuance and service of the summons. That such a practice would be more orderly may be conceded, but it does not necessarily follow that its omission is fatal to the proceedings, especially since defendant voluntarily appeared at the forfeiture of the recognizance, and was heard in opposition to it. Forfeiture is the first step in suing out a bond, and has been held to be not a preliminary to, but an integral part of, the proceedings. As was said by Rice, P. J., in Commonwealth v. Meeser, 19 Pa. Superior Ct. 1, 8, 9, in discussing process on a recognizance:

"But whether the process be scire facias or summons, 'it is no further to be reckoned as an original suit, than that the defendant has a right to plead it.

It is founded on the recognizance, partakes of its nature, must be considered as flowing from it, and, when final judgment is given, the whole must be taken as one record:' Commonwealth v. Phila. County Commissioners, 8 S. & R. 151."

This defendant had already appeared and subjected himself to our jurisdiction before the statement of claim was filed and served, and no further process was required to bring it in. Apart from that consideration, however, the long established custom not to issue such a writ has, we think, crystallized the practice in the quarter sessions in this respect, and the omission of the summons did not in any way prejudice defendant's right to a full and fair hearing of the case. A careful search of the records discloses a curious situation with respect to the development of the practice in these cases. In two early cases which went up to the higher courts, one (Commonwealth v. Fogelman, supra) in 1895, before the Act of 1897 was passed, and the other (Commonwealth v. Meeser, 19 Pa. Superior Ct. 1) in 1900, the docket entries of the quarter sessions indicate that a summons was issued, but neither the records nor the copies of them printed in the paper books on appeal show the summons, and it is not clear, therefore, whether the summons was actually issued or the entry in the docket is a mere formality. Since 1900, however, the summons does not appear to have been used, and hence it can be confidently stated that for almost half a century the filing and service of a statement of claim has been considered sufficient to bring in the surety, even when he did not appear at the time of forfeiture of the bond. There is some logical justification for such a view, because a recognizance, unlike a bond given between individuals, is an acknowledgment of a debt entered in a court of record, and by its very entry there the obligors put themselves within that

court's jurisdiction. On the other hand, when a recognizance is sued out in a different court from that in which it is entered, some process is necessary to bring them in. This, we think, accounts in some measure for the discontinuance of the use of a summons in quarter sessions proceedings. However that may be, it would be a departure from the regular practice to revive it at this late day, and its omission does not, in our judgment, render the proceedings coram non judice.

This leaves for our consideration only defendant's contention that payment of the fine is not a condition of the bond before us. This question is squarely ruled by Commonwealth to use v. Lenhart et al., 233 Pa. 526, which holds that a judgment of forfeiture is conclusive of the liability of the surety, and that nothing remains to be tried thereafter but the extent of its undertaking under the conditions of the bond.

As was said in that case:

"We think it may therefore be accepted as settled law in our state that a stipulation in a bail bond to prosecute with effect means to prosecute with success; and that when the bond stipulates distinct and independent conditions, the breach of any one condition works a forfeiture. This rule has been adopted and followed in many other jurisdictions: Karthaus v. Owings, 6 Harris & J. (Md.) 134; Trent v. Rhomberg, 66 Texas, 249; Blair v. Sanborn, 82 Texas, 686.

"This brings us to a consideration of the undertakings of the principal and sureties in the bond upon which suit was brought in the present case. The appeal was not prosecuted with success by reason of which failure there was a breach of one condition and consequently a forfeiture of the bond under the rule above stated. What liability attached to the sureties when the condition of the bond was broken? This depends upon the extent of their undertakings. . . .

We do not see any escape from the conclusion that when the Superior Court affirmed the judgment of the court below, it did so as a whole, and included every part and condition of the sentence in its affirmance. This necessarily included the payment of the fine and costs as well as the term of imprisonment. It is true that in addition to the affirmance of the judgment, the Superior Court ordered the defendant to appear in the court below, there to be committed to serve that part of his sentence which had not been undergone when the appeal was made a supersedeas, but certainly it cannot be successfully contended that the order to commit for the purpose of serving the sentence relieved the defendant from the payment of the fine and costs. The principal was obligated to pay the fine and costs because it was the judgment of the court that he should do so, and the sureties contracted for their principal that he would comply with the orders and abide by the judgment of the Superior Court. When the Superior Court affirmed the judgment of the court below, the judgment of the lower court was made part of the judgment of the appellate court for every purpose of the case. In this connection it is important to bear in mind that the bond obligated the principal not only to comply with the orders of the Superior Court, but to abide by its judgment, and that a judgment was entered and a certain order made, both of which were clearly contemplated by the conditions of the bond."

In the case before us defendant resisted the forfeiture on the ground that all it undertook was that Barfod would prosecute his appeal with effect, that is to say, with success, and, in the alternative, would pay the costs and surrender himself to the court below for execution of the sentence. The condition of the recognizance reads:

"That the said Einar Barfod will prosecute his appeal from the judgment and sentence of the Court of Quarter Sessions of the Peace and General Jail Delivery for the City and County of Philadelphia, to the Superior Court of the State of Pennsylvania in the above entitled case with effect, pay all costs and charges awarded against him, and will be and appear at the said Superior Court for the State of Pennsylvania to be holden on the first Monday of November, or any subsequent term or terms thereof, then and there to answer all such charges as may be preferred against the said Einar Barfod, and to abide the decision of the said Court, and not to depart the said Superior Court of the State of Pennsylvania and the Court of Quarter Sessions * * * without leave, and upon the affirmance of the sentence and judgment * * * the said Einar Barfod will surrender himself to the Sheriff of Philadelphia County, so that the sentence heretofore imposed upon the said Einar Barfod * * * may be executed * * * then this recognizance to be void and of no effect; otherwise in full force and virtue."

In the Lenhart case cited above, in which the language of the condition, though not exactly the same, was essentially similar to that of the bond here sued on, it was held that the conditions were distinct and separate undertakings and not in the alternative, and that a breach of either constituted a condition broken, and worked the forfeiture. The forfeiture here was adjudged on three grounds: Failure (a) to prosecute the appeal with effect; (b) to abide the decision of the Superior Court, that is to say, to comply with it; and (c) to pay all costs and charges awarded against him. An agreement to pay all "costs and charges awarded against" one obviously comprehends more than to pay only the costs, as defendant would have us hold. To interpret these words as limiting the

undertaking to the payment of costs only would completely ignore the words "charges awarded against him." A fine is as much a charge against one as are the costs in a case, and "awarded" is equal to "adjudged." But even if this were not so, an undertaking to abide by the decision of a court denotes obedience to, and compliance with, the judgment of the court, and the judgment here appealed from became, by its affirmance in its entirety, also the judgment of the Superior Court, which their recognizance bound defendants to observe and carry out: Commonwealth v. Lenhart, supra.

For these reasons we conclude that defendants are liable to the Commonwealth for the unpaid fine and costs in the case, amounting to $1,025.13.

The Commonwealth's motion to strike out that portion of the affidavit of defense which pleads a form of appeal bond which the Commonwealth is alleged to be using, but did not exhibit at the time of the appeal in this case, should be granted. Defendant's counsel is well aware that the form so pleaded was not in existence when Barfod's appeal was taken, and that it was prepared for future use long after the objections to the old form were raised by defendant surety company in this very case in order to improve and clarify the language employed in such bonds. It is scarcely ingenuous, therefore, to plead a nonexistent form of bond as not having been exhibited to defendant when the appeal was taken. Besides, it is a mere pleading of irrelevant evidence, and hence not properly part of an affidavit of defense. The motion to strike out is, therefore, granted, the Commonwealth's rule for judgment for want of a sufficient affidavit of defense is made absolute, and we now enter the following judgment in the case:

And now, to wit, February 26, 1946, judgment in favor of the Commonwealth and against defendant, Einar Barfod, as principal, and Maryland Casualty

Company, as surety, in the sum of $1,025.13, with interest at 6 percent to date from October 5, 1945, when the forfeiture was declared; the clerk to compute the interest and add it to the principal of the judgment.

NOTE.—Affirmed by the Superior Court on December 11, 1946, in Commonwealth v. Barfod et al., 160 Pa. Superior Ct. 59. The opinion of the Superior Court does not contain as extended a discussion, especially of the procedural matters, as contained in the foregoing opinions.